UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATHY L. KENT )
)
V. ) NO. 2:12-CV-183
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is an action for judicial review of the administrative denial of the plaintiff's application for disability insurance benefits under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Doc. 8 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 47 years of age at the time of her alleged onset of disability on May 15, 2008, and was 50 at the time of the ALJ's adverse decision, meaning that she is now a person "closely approaching advanced age" under the applicable regulations. She has a limited education. There is no dispute that she cannot return to her past relevant work.

The plaintiff's relevant medical history is adequately summarized in the Commissioner's brief as follows:

> From March 2008 to January 2009, Plaintiff saw Michael Tino, M.D., and family health nurse practitioner (FNP) Craig Howard for primary care treatment (Tr. 267-82). Dr. Tino and Mr. Howard prescribed Lexapro and Xanax to treat Plaintiff's anxiety and depression (Tr. 267-82). In March 2008, Mr. Howard indicated that Plaintiff stated that her increased back and joint pain had made it much harder for her to work (Tr. 280). In October 2008, Mr. Howard indicated that Plaintiff had anxiety and depression with a panic disorder for years and was still able to work and fully function in her activities of daily living (ADLs) (Tr. 273).
> 
> Beginning in approximately February 2009, Plaintiff began receiving primary care treatment from the Castle Clinic. The Castle Clinic continued to prescribe Lexapro and Xanax to Plaintiff to treat her anxiety and depression (Tr. 199, 201, 206, 208, 210, 331, 340, 348, 376-78, 386, 388, 390). In February 2010, Plaintiff's anxiety had reportedly increased (Tr. 331), and a report from May 2010 indicated that Plaintiff's depression had worsened (Tr. 377-78). In July 2010, Plaintiff indicated that she felt that she needed therapy "more than ever" due to anxiety and her "home situation" (Tr. 388). Nonetheless, throughout Plaintiff's treatment at the Castle Clinic, the treatment reports indicate that Plaintiff was alert and oriented to time, place, and person (TPP), had intact recent and remote memory, and had no abnormalities of mood or affect (Tr. 199, 206, 208, 210, 329, 331, 335, 344, 347, 351, 388).

2

In September 2009, Plaintiff was physically examined by consultative examiner Krish Purswani, M.D. (Tr. 296-99). Following this examination, Dr. Purswani diagnosed Plaintiff with anxiety (Tr. 299). Plaintiff also received a psychological examination in September 2009 (Tr. 291-95). Consultative examiners Kathy Jo Miller, M.Ed. and Robert S. Spangler, Ed.D. indicated that Plaintiff was alert and oriented times three and was agitated and complaining before she walked into the evaluation room (Tr. 292). Ms. Miller and Dr. Spangler opined that Plaintiff's social skills were marginally adequate (Tr. 293) and that her ability to understand did not appear to be significantly limited (Tr. 295). Ms. Miller and Dr. Spangler also indicated that Plaintiff had moderate memory problems (Tr. 295). Further, Ms. Miller and Dr. Spangler opined that Plaintiff's moderate and untreated bipolar disorder limited her ability to sustain concentration and persistence, her ability to interact socially, and her ability to adapt (Tr. 295).

In January 2010, state agency medical consultant Robert de la Torre, Psy.D. reviewed all of the evidence within the record at the time and opined that Plaintiff was mildly restricted in her activities of daily living, moderately limited in maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace (Tr. 319). Dr. de la Torre acknowledged the report of Ms. Miller and Dr. Spangler that indicated Plaintiff was more severely limited in maintaining concentration and persistence than he found, but he only assigned partial weight to this report because it was not supported by the medical examination reports (MER) from Plaintiff's treating physicians or Plaintiff's reported functional activities (Tr. 321). Dr. de la Torre concluded that Plaintiff retained the capacity to do all of the following: understand and remember simple and one-to-three step detailed instructions; concentrate and persist for 2-hour time periods in an 8-hour day with customary breaks; interact appropriately with supervisors and peers; set goals infrequently; and adapt to infrequent change (Tr. 325). Dr. de la Torre also stated that Plaintiff could not interact effectively with the general public (Tr.325).

In March 2010, state agency medical consultant Andrew J. Phay, Ph.D., reviewed all of the medical evidence within the record at that time and reached the same conclusions as Dr. de la Torre (Tr. 362). Accordingly, Dr. Phay affirmed Dr. de la Torre's opinions (Tr. 362).

In August and September 2010, Plaintiff received treatment from licensed senior psychological examiner (LSPE) Christine Newby (Tr. 391-97). A form from Ms. Newby's facility dated August 11, 2010, the day Plaintiff first saw Ms. Newby, indicates that Plaintiff had the following mild symptoms: diminished ability to think; impaired judgment; poor attention or concentration (Tr. 395). This same form indicates that Plaintiff had the following moderate symptoms: psychomotor retardation; academic or work inhibition; social withdrawal; anxiety; worrying; indecisiveness; decreased appetite; anger; insomnia; report of abuse or neglect (Tr. 395). This same form also indicates that Plaintiff had the following severe symptoms: decrease in energy or fatigue; depressed mood; feeling worthless; helplessness; hopelessness; interpersonal rejection sensitivity; loss of interest or pleasure; low self-esteem (Tr. 395). Ms. Newby indicated in her treatment notes for

3

Plaintiff's first visit that Plaintiff was difficult to interview "presumably due to her depression" (Tr. 394). Ms. Newby also stated that Plaintiff reported a history of abuse and current marital problems (Tr. 394). Further, Ms. Newby stated that Plaintiff was very soft spoken and had difficulty remembering and giving information (Tr. 394). Ms. Newby also reported that Plaintiff denied suicidal ideations (SI) and homicidal ideations (HI), but equivocated regarding whether she heard things (Tr. 394).

For Plaintiff's second visit with Ms. Newby on September 9, 2010, Ms. Newby reported that Plaintiff discussed her history, including being raped by her brother as a young teen and being beaten by her first husband (Tr. 393). Ms. Newby indicated that Plaintiff believed she would never be able to please her parents and her children only wanted money from her (Tr. 393). Once again, Ms. Newby reported that Plaintiff had no suicidal or homicidal ideations, but Ms. Newby also indicated that it was unclear whether Plaintiff had psychotic symptoms (Tr. 393). Ms. Newby diagnosed Plaintiff with depression, anxiety, and likely post-traumatic stress disorder (PTSD) (Tr. 393).

In her third visit with Ms. Newby on September 22, 2010, Ms. Newby reported that Plaintiff discussed how she would never get over the loss of her ex-husband (Tr. 392). Plaintiff also stated at this visit that she was having problems with her daughter, who was currently staying with her (Tr. 392). Ms. Newby reported that Plaintiff had no suicidal or homicidal ideations and indicated that Plaintiff was depressed and anxious (Tr. 392).

The latest treatment note from Ms. Newby within the record is dated September 29, 2010, and it indicates that Plaintiff cancelled her appointment because she was not feeling well (Tr. 391). It also indicates that Plaintiff stated over the phone that she had increased anxiety and increased stress due to her parents discussing the rape she experienced as a teen (Tr. 391).

In October 2010, Ms. Newby opined on a checklist form that Plaintiff had a fair ability to do all of the following: follow work rules; relate to coworkers; deal with the public; use judgment with the public; interact with supervisors; function independently; maintain attention and concentration; understand, remember, and carry out job instructions; maintain personal appearance; and behave in an emotionally stable manner (Tr. 407-08). Ms. Newby also opined that Plaintiff had a poor ability to do all of the following: deal with work stresses; relate predictably in social situations; and demonstrate reliability (Tr. 407-08).

In November 2010, Plaintiff was referred by her attorney to LSPE William J. Hamil, M.Ed., for a psychological evaluation (Tr. 398-403). Mr. Hamil reported that he felt rapport with Plaintiff was established and maintained throughout the evaluation (Tr. 398). Mr. Hamil also reported that Plaintiff's attitude was cooperative and polite (Tr. 398). Further, Mr. Hamil indicated that Plaintiff was "spontaneously verbal, rambling in answers, tearful at times, and an adequate historian" (Tr. 398). Mr. Hamil also noted that Plaintiff related well to him and that Plaintiff reported that when she was working, she had good relations with her coworkers and supervisors (Tr. 402). However, Mr. Hamil opined that Plaintiff's interpersonal skills were poor

4

(Tr. 402). Mr. Hamil further opined that Plaintiff was limited to work involving simple job instructions and simple repetitive tasks (Tr. 403). Additionally, Mr. Hamil opined that Plaintiff's concentration and persistence were inadequate "to meet the demands of more than simple work-related decisions" (Tr. 403). Mr. Hamil also stated that Plaintiff displayed "an extremely unsatisfactory ability to interact with others in an appropriate manner" (Tr. 403). Further, Mr. Hamil stated that Plaintiff appeared "to be markedly limited in her ability to adapt to changes in the workplace, to be aware of normal hazards, or to take appropriate precaution because of panic attacks, diminished ability to think/concentrate, and apathy" (Tr. 403). Mr. Hamil also opined that Plaintiff's "anxiety, mood, and physical problems may extremely detract from her ability to maintain attendance and meet an employment schedule" (Tr. 403). Mr. Hamil diagnosed Plaintiff with panic disorder without agoraphobia, anxiety disorder, depressive disorder, and PTSD (Tr. 403).

     Mr. Hamil provided additional opinions on a checklist form (Tr. 404-06). Mr. Hamil indicated that Plaintiff had a poor ability to do all of the following: relate to coworkers; deal with the public; use judgment with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; remember and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability (Tr. 404-05). Mr. Hamil indicated that Plaintiff had a fair ability to do all of the following: follow work rules; function independently; and remember and carry out detailed instructions (Tr. 404-05). Additionally, Mr. Hamil opined that Plaintiff would miss an average of more than two days per month due to her impairments (Tr. 406). Mr. Hamil also found that Plaintiff's ability to remember and carry out simple instructions was good and that Plaintiff was capable of managing benefits in her own best interest (Tr. 405-06).

[Doc. 13, pgs. 2-7].[1]

On March 8, 2010, plaintiff completed a Social Security Agency questionnaire in support of her application detailing her activities at that time (Tr. 170-177). Plaintiff stated that she does limited housework, laundry and daily meal preparation. She indicated that she cares for her pet dog. She stated that she drives and shops for food, clothing and medicine. She pays bills, uses the checkbook and handles other routine financial matters. Plaintiff

---

[1] Plaintiff did not take issue with the ALJ's finding that she could, from a physical exertion standpoint, perform light work. Any further argument regarding her physical capabilities is waived.

5

stated that she used to enjoy boating, baseball and dancing, but "cannot do any of the above activities due to increased back pain, anxiety and depression." She indicated that she phoned others and visited others. On a "regular basis" she would go to the drug store, grocery store and her parents' house. She pointed out that "I cannot cope with any negativity" and "cannot participate in any social activity." She indicated she had a fair ability to follow spoken instructions and to get along with "authority figures." She said she has a poor ability to handle stress or changes in routine, and suffered from paranoia.

The hearing before the ALJ took place on December 9, 2010. After testifying about her past relevant work, plaintiff discussed her physical and mental ailments. She stated she suffered from a bipolar disorder, depression and anxiety, and described her medications (Tr. 47). She stated that she has trouble focusing and concentrating, forgets easily and gets confused. She also stated that she did not visit with family and friends "very much at all. I really don't want to be around anyone." (Tr. 48).

The ALJ then took the testimony of Ms. Donna Bardsley, a vocational expert ["VE"]. After describing the plaintiff's past relevant work, Ms. Bardsley was asked to assume that the plaintiff was restricted to light work, and was only capable of performing simple, routine, repetitive tasks and only able to maintain concentration and persistence for such tasks. She was asked to assume that the plaintiff was only able to adapt to gradual and infrequent changes in a work setting, with no public interaction and only occasional interaction with coworkers and supervisors. When asked if she could do any of her past work, Ms. Bardsley opined plaintiff could not. (Tr. 49-50). Ms. Bardsley did identify a number of jobs such a person could do with those limitations. She stated that available jobs were hand packager

6

with 575 in the region and 750,000 nationwide, sorters with 400 in the region and 475,000 nationwide, assemblers with 500 in the region and 600,000 nationwide, and inspectors with 445 in the region and 385,000 nationwide. (Tr. 51). If plaintiff had the limitations described by Mr. Hamil and Ms. Newby, there would be no jobs she could perform. (Tr. 51-52). Plaintiff's counsel asked Ms. Bardsley if there were a problem with concentration and persistence "as indicated in our prior examination because, you know, Ms. Miller and [Spangler], what impact would that limitation have?" Ms. Bardsley stated that there would be no jobs with those limitations. (Tr. 52).

In his hearing decision, the ALJ found that plaintiff had severe impairments of degenerative disc disease of the cervical and thoracic spine, depression and an anxiety disorder. (Tr. 24). He made this finding based upon the reports of Dr. Purswani, Dr. Tino, Kathy Jo Miller, and Mr. Hamil. (Tr. 25). He found that the plaintiff did not have a listed impairment or equivalent impairment. (26-27).

He then found that the plaintiff has the residual functional capacity ["RFC"] "to perform light work..., except that she is restricted to simple, routine, repetitive tasks calling for infrequent adaptation to change; she is to avoid more than occasional interaction with coworkers or supervisors; and is to avoid all interaction with the general public." (Tr. 27). He then stated that the plaintiff's statements about the intensity, persistence and limiting effects of her symptoms "were not fully credible" to the extent they were inconsistent with the RFC finding. (Tr. 27).

He then stated that he gave "little weight to the conclusions of Mr. Hamil regarding the claimant's mental functioning, since these conclusions were inconsistent with the

7

claimant's clinical presentation and with the weight of the medical evidence." He made the same finding with respect to the opinion of Ms. Newby. He stated that both "opinions were unsupported by any analysis or rationale, and they were not consistent with the weight of the evidence." He then stated that he gave "the greatest weight to the mental assessments of the State Agency physicians, who opined that the claimant was restricted to simple tasks with infrequent adaptation and no interaction with the general public. These opinions were most consistent with the weight of the evidence." (Tr. 28).

He then found that the plaintiff was capable, with that RFC, of performing the jobs identified by Ms. Bardsley at the hearing. Accordingly he found that she was not disabled. (Tr. 29).

Plaintiff asserts that the ALJ's decision is fatally flawed in three respects. First, she states that the decision was not supported by substantial evidence. Second, she claims the decision is not supported by the testimony of the VE. Third, she asserts that "the ALJ erred by disregarding 20 C.F.R. § 404.1527 through his failure to adequately analyze relevant medical opinion evidence in the file."

In the first assertion of error, the plaintiff basically takes issue with the weight assigned to Mr. Hamil and Ms. Newby, and to a certain extent, the opinion of consultative examiner Miller. Instead, plaintiff asserts that the ALJ gave far too much weight to the State Agency psychologists who examined the record. She notes that Dr. de la Torre, one of these psychologists, issued his report on January 6, 2010. (Tr. 300-322). She says the report of de la Torre "cannot constitute substantial evidence because he never saw Ms. Kent and he never had access to the complete evidentiary record. He based his opinion on a cursory

8

review of the records in her case at the time of his review, nearly a year before her hearing." She says Dr. de la Torre did not cite to evidence to support his opinions, was contradicted by all of the other evidence in the record, and could not have taken into account mental health evidence which was placed in the record after his report was filed.

There is absolutely no dispute that the plaintiff has "severe" mental impairments which greatly limit her ability to function. The issue is the degree of severity, and what she can or cannot do with those impairments. The Newby and Hamil reports, and apparently that of Ms. Miller, indicate a degree of limitation which, in the sound judgment of the VE, preclude any employment. Contrasted against this is the report of Dr. de la Torre, affirmed by Dr. Phay, another State Agency psychologist, on March 15, 2010 (Tr. 362). Contrary to the plaintiff's assertion regarding Dr. de la Torre that he disregarded the evidence existing in January of 2010, and did a "cursory review" at that time, his report goes into great detail (Tr. 321) explaining why he reached the conclusions on degree of limitation and credibility that he did.

Ms. Newby and Mr. Hamil, while entitled to consideration, are not treating sources, and not entitled to the heightened level of deference accorded to treating physicians. However, their opinions must be considered, and the ALJ did so. This case is somewhat similar to *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006). In that case, a treating physician's opinion was given little weight, while the opinion of a State Agency physician was relied upon by the ALJ. The ALJ discounted the treating physician's opinion based upon the contrary opinion of the State Agency physician, the plaintiff's activities, and the lack of clinical findings in the treating physician's report to support his opinion. In the

9

present case, once again, we are talking about a fine line of degree which unfortunately separates the ability to perform substantial gainful activity from not being able to do so. The ALJ's reliance on the State Agency psychologist is not inappropriate. The level of functioning described in plaintiff's routine activities does not suggest a person who cannot at least work within the narrow confines of the RFC found by the ALJ. Also, there is an inherent difficulty in deciding the limitations imposed by mental conditions because they are based to such a degree on intangible factors.

As for the argument that a great deal of mental health evidence was generated after the State Agency completed its review, the Court cannot, and will not attempt to mandate to the Commissioner the order and process by which claims are determined. In *Combs*, some of the State Agency evidence was several years old from earlier adjudications, and there was evidence from a later period which was not before the State Agency doctor. Nonetheless, the Sixth Circuit affirmed the ALJ's reliance on him. There are certain circumstances in which later evidence not before the State Agency compels a remand, such as a plaintiff experiencing a subsequent heart attack or surgery, or perhaps being admitted for inpatient mental health treatment. This is not such a case.

Plaintiff's second assignment of error, that the ALJ's decision was not supported by the testimony of the VE at the hearing, is in effect a restatement of the first argument, with consultative examiner Miller taking the roles of Ms. Newby and Mr. Hamil. It is of course true that the VE said that if the plaintiff had the limitations opined by Ms. Miller (and endorsed by Dr. Spangler), there were no jobs she could perform. However, the question is not whether the VE said this, but whether there was substantial evidence to support the

10

Case 2:12-cv-00183-JRG-DHI   Document 14   Filed 01/30/13   Page 10 of 12   PageID #: 93

hypothetical question posed to the VE in which she identified the jobs described hereinabove. Dr. de la Torre thoroughly discussed Miller and Spangler's report, but disagreed with their opinion regarding the level of impairment in the area of concentration, persistence and pace. (Tr. 321). For the reasons set forth above, the ALJ gave greater weight to the opinion of the State Agency psychologists than to her treating sources or the consultative examiners. Once again, this is a very close case which hinges upon the factual findings of the ALJ, and there is substantial evidence to support those findings.

Finally, the plaintiff asserts that the ALJ erred by not providing "a sufficient analysis" for the lack of weight given the opinions of Newby and Hamil as required by 20 C.F.R. § 404.1527(c). This section applies to "statements from physicians and psychologists or other acceptable medical sources..." In § 1513(a)(2), "acceptable medical sources" relating to psychology are defined as being "licensed or certified psychologists." They must still be considered by the ALJ under § 1513(d), but if they are not an acceptable medical source, § 1527(c) does not apply to them. In any event, even if they are, the ALJ's explanation of the weight assigned to them was sufficient. In *Francis v. Commissioner*, 2011 WL 915719 (6th Cir. 2011), the ALJ discounted the plaintiff's treating osteopath, simply stating that he assigned no weight to his opinion "because it conflicted with the other medical opinions, the medical evidence, Francis's conservative treatment, and his daily activities." *Id.*, pg. 1.

In the present case, the ALJ gave "little weight to the conclusions of Mr. Hamil regarding the claimant's mental functioning, since these conclusions were inconsistent with the claimant's clinical presentation and with the weight of the medical evidence." With respect to Ms. Newby, he stated he gave "little weight to the checklist-style questionnaire"

11

she completed. With respect to both he stated "these opinions were unsupported by any analysis or rationale, and they were not consistent with the weight of the evidence." (Tr. 28). In *Francis*, the Sixth Circuit stated "the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more." *Id.*, at pg. 3. In the present case, the ALJ discussed the plaintiff's activities, and gave greatest weight to the State Agency psychologists. As in *Francis*, the regulations require no more.

This was a difficult case to review, given the closeness of the issue of the effects of her mental impairments. No doubt, it was a difficult case for the ALJ. Plaintiff has been well represented and her counsel has made compelling arguments in this action. However, the Court is limited in its review to see if there is substantial evidence to support the ALJ or if he made errors of law requiring reversal or remand. Here, there is substantial evidence and there are no such errors of law. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[2]

                Respectfully submitted,

                              s/ Dennis H. Inman
                              United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).